## Baldwin's Appeal. No. 1

*Bryan & Evans*, for appellant.

*E. M. Murphy* and *J. S. Jiuliante*, for appellee.

COPELAND, P. J., tenth judicial district, specially presiding, April 27, 1933.— This matter comes before us on petition and answer in the nature of a demurrer.

Petitioner is the owner of real estate in the City of Erie, which was assessed for city tax purposes at the triennial assessment held in the year 1930. He now asks that the valuation placed upon this property in the 1930 triennial assessment may be changed—reduced—and that the taxes for the year 1933 be levied on this changed valuation. He alleges that the real estate has greatly depre-

ciated in value since the triennial assessment was made and that this assessment is unjust, inequitable, and excessive. The time for appeal from the 1930 triennial assessment has long since gone by. We judge that it was considered fair and equitable at the time it was made, or at least that this matter was adjusted by proper procedure within the proper time and that the valuation set out in exhibit "A" attached to the petition has been properly fixed by law.

An examination of the petition discloses that petitioner brings this matter before us after having requested the city assessor, in writing, on or about August 27, 1932, to make a reduction in the valuation of his property; that upon the assessor's neglect and refusal to act, an appeal was taken to the board of revision of taxes and appeals, which board refused to change the valuation.

In this manner, petitioner attempts to get the question of the depreciation in the value of his property before us. He relies upon section 2506 of The Third Class City Law of June 23, 1931, P. L. 932, for his authority in this proceeding. This section prescribes the duties of the city assessor in years other than a triennial assessment year. There is but one subsection of the act which particularly applies in this case, namely: "(d) Deduct from the value of any property any depreciation caused by destruction, injury, or otherwise, howsoever."

Petitioner does not complain that his property has been destroyed or injured in any manner. In fact, there is no averment that there is any depreciation which is specially limited to the property of petitioner. The allegation is simply that the property has depreciated. We assume, therefore, that the depreciation complained about is the general depreciation of all property in the city. An examination of the schedule attached to the petition discloses that petitioner owns approximately 1,150 properties situated throughout all parts of the City of Erie. We believe we may take judicial notice of the fact that there has been a great depreciation in the value of all real estate since the year 1930. It is this depreciation of which petitioner desires to take advantage. To allow him to do so without having the property of his neighbor revalued would not be just or equitable.

To levy taxes on the 1930 valuation for the year 1933 would be just, equal, and uniform. To permit the petitioner's property alone to be revalued, taking into consideration the depreciation which is general to all properties since 1930, and to have the 1933 taxes levied on a valuation made up in this manner would not be just or equal.

Benson, J., in the case of Rees v. City of Erie, 243 Pa. 189, in an opinion which was adopted by the Supreme Court, said:

"Uniformity of valuation for tax purposes is a mandate of the fundamental law of the State."

Article IX, section 1, of the Constitution of the State of Pennsylvania, provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; . . ."

Mr. Justice Elkin in construing this section of the Constitution said in his opinion in Delaware, Lackawanna & Western Railroad Company's Tax Assessment (No. 1), 224 Pa. 240, 243:

"While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject, but it is a fundamental principle

written into the constitutions and statutes of almost every state in this country. In Pennsylvania the framers of the new constitution embodied this principle in our organic law in terms so plain that no one should misunderstand its meaning or doubt its application, and the people by the adoption of that instrument placed the seal of their approval upon a system of taxation which has for its corner stone uniformity in the valuation, levy and collection of all taxes. Section one of article nine provides that, 'All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.' There is, perhaps, no other section of the constitution upon which the courts above and below have been so frequently required to pass in the administration of their duties. The central thought running through all the opinions is that the principle of uniformity is a constitutional mandate to the courts, to the legislature, and to the taxing authorities, in the levy and assessment of taxes which cannot be disregarded. The purpose of requiring all tax laws to be uniform is to produce equality of taxation. Absolute equality is difficult of attainment, and approximate equality is all that can reasonably be expected."

It is the duty of the assessor and the board of revision of taxes and appeals, and of the court, to obey this mandate.

It has been held that uniform increase in the value of real estate is no cause for complaint.

It was said by Mr. Justice Elkin in the case of Mineral Railroad & Mining Company v. Northumberland County Commissioners (No. 1), 229 Pa. 436, 455, that:

"Uniform increase in the values of real estate throughout the entire district is not the test of uniform assessments. The assessment is uniform within the meaning of the law if the average ratio of assessed to actual market value is applied in determining the valuation of each separate tract."

We, therefore, interpret subsection (d) of section 2506 of The Third Class City Law of 1931 to mean that the legislature required the city assessor to do such things in a year other than the triennial assessment year as would tend to equalize the valuation of property. If a property were depreciated, by reason of a "destruction" thereof, "injury" thereto, or "otherwise", which caused it to become less in value proportionately than the neighboring properties, the assessor is to take into consideration this fact and change the value thereof so as to equalize the valuations. To do what petitioner desires us to do would be making the valuations unequal and not uniform. To interpret subsection (d) as petitioner desires us to do would in effect make it unconstitutional.

In the case of The Commonwealth v. Fraim, 16 Pa. 163, 169, it was said by Judge Chambers:

"Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute. It is said a thing within the letter of the statute is not within the statute unless it be within the intention of the makers; and such construction ought to be put on it as does not suffer it to be eluded: People v. Utica Ins. Co., 15 Johns. Rep. 381; 8 Bac. Abr. tit. Statutes 247."

In order that justice may be done, it would be necessary to have a revaluation of all the property in the whole city, taking into consideration the present "slump" in the value of real estate. It may be that this would be a wise thing for the city council to do, but we cannot substitute our judgment for that of city council.

Section 2515 of The Third Class City Law gives the city council the right to require the city assessor to make a new assessment at any time:

"Section 2515. New Assessments.—The council, in any years other than a triennial year, if it shall deem a new assessment necessary, may, on or before the first day of May, issue its precept to the city assessor and by ordinance or resolution require him to make out and return a full, just, and equal assessment of property within the city, or such parts thereof as may be deemed advisable."

It may be that the legislature in its wisdom placed this section in the act to take care of such a situation as we have before us. If this be true, the remedy of the petitioner would be by petition to city council, requesting that it act under section 2515. This, petitioner did not do. He elected to go directly to the assessor under section 2506 and request him to perform the duty prescribed in subsection (d) thereof. For him to have granted his request would have resulted in injustice.

For the reasons in this opinion set forth, we sustain the answer of the city and dismiss the petition, and make the following decree:

And now, to wit, April 27, 1933, after argument and after due and careful consideration, the answer in the nature of a demurrer, be and the same is hereby sustained, and the petition be and the same is hereby dismissed at the cost of the petitioner.

From Otto Herbst, Erie, Pa.