In re License of Jonathan A. Umholtz.    Appeal of Jonathan A. Umholtz.

*Liquor laws—Transfer of license—Act of April* 20, 1858—"*Party licensed.*"

As the Act of May 13, 1887, P. L. 111, relating to licenses to sell liquor, makes no reference to transfers, they are still governed by the Act of April 20, 1858, P. L. 366, sec. 7.

Where a person to whom a liquor license has been granted dies or removes in the interval between the granting or awarding of the license by the court and the payment of the license fee, the license may be transferred by the court to another person.

The expression, "party licensed," in the act of 1858 means the person to whom the court has awarded the right to have a license.

*Statutes—Construction of statutes.*

Statutes are to be construed so as best to effectuate the intention of the legislature although such construction may seem contrary to the letter.

All laws must be executed according to the sense and meaning which they imported at the time of their passage.

A remedial statute is to be extended to cases in equal mischief.

191          177
21 SC    518

191          177
22 SC    *355

191          177
i 24 SC   *441

191          177
210        *530
27 SC     540

191          177
214        *648

191          177
d 31 SC   160
31 SC    161
d 31 SC   162

191   177
41SC*380

Argued April 4, 1899. Appeal, No. 147, Jan. T., 1899, by Jonathan A. Umholtz, from judgment of Superior Court, Oct. T., 1898, No. 154, reversing judgment of Q. S. Phila. Co., refusing to transfer a license. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed. STERRETT, C. J., and FELL, J., dissent.

Appeal from judgment of Superior Court.
The case was reported in 9 Pa. Superior Ct. 450.

*Error assigned* was the judgment of the Superior Court.

*James E. Hood*, with him *Charles Edw. Ingersoll* and *Francis I. Gowen*, for appellant.—The act of 1858 was passed to apply to cases where the licensee shall die, remove, or cease to keep the house, and as the act of 1887 contains no provisions on that subject, it has no application to the case: Blumenthal's Petition, 125 Pa. 412.

The exact point has not been decided by this Court, nor, so far as is known, by any of the lower courts of the state. But there are numerous cases in the various quarter sessions courts in which the rights of granting a license to a successor of a party who had removed or died have been considered: Russell's License, 11 Pa. C. C. R. 505; Teller's License, 3 Pa. C. C. R. 235; Heilig's License, 12 Pa. C. C. R. 538; McOmber's License, 3 Dist. Rep. 431; Summa's License, 12 Pa. C. C. R. 667; Breen's License, 13 Pa. C. C. R. 141; Doyle's License, 6 Kulp, 356; Leahy's License, 14 Pa. C. C. R. 430.

*Lewis D. Vail*, with him *D. C. Gibboney*, for appellees.—The license to Umholtz could be transferred or issued only under the provisions of the 7th section of the Act of April 20, 1858, P. L. 366.

If Hamburg had paid his license fee on May 19, 1898, and presented his bond with sufficient sureties, the court could not order a license to be granted him: Wacker's License, 6 Pa. Superior Ct. 323. Much less could Umholtz have paid the fee and filed his (Umholtz's) bond.

This Court, in Blumenthal's Petition, 125 Pa. 412, did not decide that all the act of 1858 was still in force, but did decide that the 7th section was.

OPINION BY MR. JUSTICE GREEN, April 27, 1899:

This case comes before us upon an appeal from an order of the Superior Court reversing the grant of a license to sell liquors at retail, made by the court of quarter sessions of Philadelphia county. In the latter court the application was for the grant of a license to the present appellant to sell liquors at retail on the premises Nos. 227–229 North Third street, Philadelphia. The special facts disclosed in the petition were that the court of quarter sessions had, at the April term, 1898, granted a license to one Hamburg to sell liquors at retail on the same premises, which order was made on May 2, 1898; that on May 14, the licensee, Hamburg, removed from the premises and left the state, without any intention to return and take charge of the business. The petitioner asks for the grant of a license to him for the remainder of the year upon payment of a proportionate part of the fee for the year.

The application was made exclusively under the 7th section of the Act of April 20, 1858, P. L. 366. That section contains the following provision: "But if the party licensed shall die, remove, or cease to keep such house, his, her or their license may be transferred by the authority granting the same, or a license be granted to the successor of such party for the remainder of the year, by the proper authority, on compliance with the requisitions of the laws in all respects except publication which shall not in such case be required." In Blumenthal's Petition, 125 Pa. 412, we said, "The act of 1887 by which the issue of licenses to sell liquor is now regulated, makes no reference to transfers, and they are therefore still governed by the Act of April 20, 1858, sec. 7, P. L. 366." The same is true for the same reason as to the granting of new licenses. It is necessary therefore to look alone to the act of 1858 in determining all cases of this character. The learned Superior Court in disposing of the present case based its conclusion upon a construction of the word "licensed," in the phrase, "But if the party licensed shall die, remove or cease to keep such house," etc. The court held that this word "licensed" applied only in cases in which the preceding party had absolutely concluded all the things which it was necessary for him to do in order to obtain his license, and that the license had been actually issued and license money paid, before it could be held that he was a "party li-

censed " within the meaning of the act.    We think this is a too
narrow construction of the act.   The very purpose of the act
was to reach cases in which there was an interruption in the
active life of the license.   If the licensee died or removed, or
ceased to keep the house which was the subject of the license,
there was a practical vacation of the license in its active opera-
tion.   Another year would have to transpire before a new appli-
cation could be made and, as this would be a useless hardship
to the owner of the property and a deprivation of the public in
the accommodation which the house afforded, it was desirable
that a more speedy remedy be provided for the existing diffi-
culty.   Hence, a method was provided by which the business
could go on without serious interruption.   It was therefore
within the meaning and spirit of the act to provide a quick
means of relief in all cases in which the business of the house
would be otherwise suspended by the death, removal or inac-
tion of the licensee.   Now the person designated in the act as
the occasion or interruption of the life or activity of the license
is " the party licensed."   If such a party should die or remove
in the interval between the granting or awarding of the license
by the court and the payment of the license fee, there would
be just as much of an interruption to the business of the house
as if he should live until he had paid the fee and then died.
Hence the occasion for the intervention of the court by the
transfer of the license, or the grant of a new one, would be just
as urgent in the one case as in the other.   Unless we are shut
up, therefore, by the language of the act to the conclusion that
the relief can only be given in cases where the fee has been ac-
tually paid, we ought not to draw such an inference, and by
that means deprive the owner and the public of the needed re-
lief.   The expression " party licensed," does not necessarily
mean any more than the person to whom the court has awarded
the right to have a license.   When the court has acted by grant-
ing to the applicant the right to have the license, it has per-
formed its whole function.   There is nothing further to be done
by the court.   Hence this action of the court is always consid-
ered and spoken of as granting the license.   In this very case
the remonstrance filed says, " That a license was granted to
William Hamburg for the year beginning June 1, 1898."   In
all common acceptation, the action of the court in granting the

application of the petitioner is described and treated as the granting of the license. In the petition of the present applicant it is expressly set forth. " That at the session of your honorable court commencing in the month of April of the present year an application was presented by William Hamburg for a license to sell liquors at the above mentioned premises, which petition was duly considered and an order thereupon made granting the prayer of the same and directing the issuance of said license." This statement is not controverted. Now the function of the court being completely exercised, the only remaining thing to be done is the payment of the license fee, and when that is done the clerk makes out the formal license and delivers it to the applicant. This part of the proceeding is the act of the applicant and follows the grant by the court as a matter of course. It seems to us quite clear that the words "party licensed " in the act mean the party to whom the right to have a license has been granted. Such was the manifest understanding of the court of quarter sessions in this case, and such, as we are informed by one of our number who has had a large experience, is the practice and understanding of the courts of quarter sessions in other parts of the commonwealth. It must also be understood that it is a law we are interpreting and not a contract between private parties. All legislation, especially that which regulates proceedings in the courts, is of a broader and more comprehensive scope, and is couched in more generic language than is employed in the drafting of private contracts, and requires an interpretation conformable to its general purpose. Thus statutes are to be so construed as best to effectuate the intention of the legislature, though such construction may seem contrary to the letter: Com. v. Fraim, 16 Pa. 163; Com. v. Monongahela Nav. Co., 66 Pa. 81. All laws must be executed according to their sense and meaning which they imported at the time of their passage: Com. v. Erie and North East. R. R. Co., 27 Pa. 339. A remedial statute is to be extended to cases in equal mischief: Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 Rawle, 9.

We think it was the clear purpose of the act, also, to protect the owner of the house from the loss of business which would result from the lapse of the license by the death or default of the licensee. The owner would not be responsible for such a

result, and ought not to suffer from it, and hence he is fairly entitled to relief in just such circumstances as have occurred in this instance. For these reasons we feel obliged to reverse the order of the Superior Court and sustain the grant of the license made by the court of quarter sessions.

The order of the Superior Court is reversed and the decree of the court of quarter sessions granting the prayer of the petitioner and ordering that a license issue to Jonathan A. Umholtz is affirmed, the costs to be paid by the appellee.