# Commonwealth of Pennsylvania v. Alexander, Appellant.

*Criminal law—Possession of intoxicating liquor—Fermentation by natural process—Beverage purposes—Case for jury—Act of March 27, 1923, P. L. 34, Section 3.*

The act of March 27, 1923, P. L. 34, prohibits the possession in a private dwelling of intoxicating liquor produced by natural fer-

mentation of fruit juices for use as a beverage, and such possession is not exempted by the second provision of section 3 of the statute from the operation thereof. Section 3 excepts from the operation of the general prohibition of the manufacture and possession of intoxicating liquors, the manufacture of non-intoxicating cider and fruit juices, including the possession thereof by manufacturer incident to the manufacture after such liquor has, by natural fermentation only, become intoxicating. But in view of the manifest purpose of the statute it was not the intention of the legislature by this provision to permit either the manufacture or possession of intoxicating liquor for beverage purposes, even though the production of cider and fruit juice may have been the first step in its manufacture.

In the trial of an indictment for manufacture, possession and sale of intoxicating liquor for beverage purposes, the evidence showed that defendant had in his cellar a barrel of fruit juice which had by natural fermentation become intoxicating.

Under such circumstances possession of the intoxicating fruit juice was' not unlawful, unless for beverage purposes, and the question whether it was for such purposes should have been submitted to the jury.

Trexler and Henderson, JJ. dissent.

Argued April 9, 1928. Appeal No. 98, October T., 1928, by defendant from sentence of the Q. S. of Bedford County, No. 4, May Sessions, 1927, in the case of Commonwealth of Pennsylvania v. Peter Alexander. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for manufacture, possession and sale of intoxicating liquor. Before CULVER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty of possession of intoxicating liquor, upon which judgment of sentence was passed. Defendant appealed.

*Error assigned* was the charge of the court.

*J. Roy Lilley,* and with him *William P. Wilson* and *William G. Schrier,* for appellant, cited: Common-

wealth v. Asturino, 6 D. & C. Court Reports 537; Commonwealth v. Daldassari, 4 D. & C. Reports 657; Commonwealth v. Berdenella, 288 Pa. 510; Commonwealth v. Keister, 289 Pa. 225.

*William M. Rosenfield,* District Attorney, for appellee, cited: Consolidated Cigar Corporation v. Corbin, 285 Pa. 273.

OPINION BY GAWTHROP, J., April 18, 1928:

The defendant was tried upon an indictment containing three counts which respectively charged that he did (1) possess (2) sell and (3) manufacture intoxicating liquor for beverage purposes in the County of Bradford, in this Commonwealth, in violation of the Act of March 27, 1923, P. L. 34, commonly called the Snyder Act, passed for the purpose of carrying Amendment XVIII of the Federal Constitution into effect. He was convicted on the first count and acquitted on the second and third counts. He appeals from the sentence imposed.

It is conceded that the evidence disclosed that the defendant bought grapes, pressed the juice therefrom, filled a barrel with it, allowed it by the natural process of fermentation only to become wine having an alcoholic content of 7.1 per cent. and kept it in his cellar exclusively for use in his private dwelling until the day of his arrest.

The two assignments of error upon which this appeal is founded raise but a single question, namely, whether the trial judge committed reversible error in his charge to the jury in respect to what constitutes an unlawful possession of intoxicating liquor under the statute. Whether the charge was erroneous depends upon the construction of the Act of 1923 and particularly upon the meaning of section 3 thereof, which provides as follows: "It shall be unlawful for any person to manufacture, ...... [or] possess ......

within ...... this Commonwealth any intoxicating liquor for beverage purposes except as hereinafter set forth: Provided, however, ......that it shall not be unlawful to manufacture non-intoxicating cider and fruit juices exclusively for use in the private dwelling.'' After reading this section of the Act to the jury the trial judge said: "It is not contrary to the law to manufacture non-intoxicating cider and fruit juices exclusively for use in a private family. Now, you will notice the statute says, 'non-intoxicating'; but our understanding of that Act is this, that unless something is placed within it when it is so manufactured, and while it yet remains non-intoxicating, as the term 'intoxicating' is defined in the law, unless something is done to it to prevent fermentation, to prevent it becoming intoxicating if it be kept until in the process of time it becomes intoxicating, when it reaches that point it is then prohibited by this statute of our state known as the Snyder Act, or [from] being possessed. Now that is our understanding of what this statute means; and, if we are correct in that, members of the jury, then if you find that the defendant did have in his possession at that time the wine, and if you further find that it contained in excess of one-half of one per cent. of alcohol by volume, that would be a violation of the one count in this indictment, charging possession." This portion of the charge is the subject of the first assignment of error.

When the judge concluded his charge a juror remarked: "As I understand, the test of that wine was 7.1 per cent." The Court: "That is the way I have it on my notes." Juror: "Do I understand that it is unlawful to have that in your house, providing that there has been no sugar or anything placed in that to produce the alcoholic constitution?" The Court: "That is my understanding of the provisions of the Act of Assembly. I do not know that there has been any decision of our higher courts upon that question; that

is one of the questions that, so far as I have been able to ascertain, has not been passed upon by the Appellate Courts, but, by the reading of the statute, as I read it to you, it says: 'It shall be unlawful to possess intoxicating liquor for beverage purposes'; then there is a further provision, or a saving clause, 'that it shall not be unlawful to manufacture non-intoxicating cider and fruit juices.' When that reaches the point where it becomes intoxicating, as we understand the statute, its possession is prohibited.'' The second assignment of error complains of this instruction.

It will be observed that the clear effect of this instruction was that the mere manufacture of non-intoxicating fruit juices exclusively for use in the defendant's private dwelling was not a violation of the law, but that the moment such fruit juices became by the natural process of fermentation intoxicating liquor, as defined by the statute, the possession thereof by him became ipso facto such an unlawful possession as is prohibited by the statute. Nor was the jury instructed that the possession was not unlawful unless it was for beverage purposes. The effect was that the jury were instructed to convict the defendant of unlawful possession if they found two facts, first, that the liquor was intoxicating, and second, that he possessed it. We cannot escape the conclusion that the charge was so erroneous and inadequate as to constitute reversible error.

Section 3 of the statute contains a general prohibition against the manufacture, possessing and doing certain other acts in respect to intoxicating liquor. It contains two provisos, one of which is as follows: ''And provided further that it shall not be unlawful to manufacture non-intoxicating cider and fruit juices exclusively for use in the private dwelling.'' What is the purpose and meaning of this proviso? Obviously the purpose which the legislature had in mind was to

except or save from the operation of the general prohibition of section 3 of the statute the *manufacture* of cider and fruit juices. But as the manufacture thereof necessarily involves the incidental possession resulting therefrom, we are of opinion that the intention of the law-makers was to except not only the actual process of manufacturing but also the whole transaction of manufacture and the possession necessarily involved. The question then arises to what extent did the legislature intend this exemption to apply to the cider and fruit juices thus produced and possessed? Does the exemption apply to them after they have, by natural fermentation, acquired an alcoholic content declared by the statute to constitute intoxicating liquor? Or, does it only apply so long as they continue to be non-intoxicating? There would seem to have been no reason for the proviso if its application be limited to non-intoxicating cider and fruit juices; for the possession of non-intoxicating liquors is not prohibited by the statute, nor referred to in its title. "It is a rule of interpretation to which all assent that the exception of a particular thing from general words proves that in the opinion of the law giver the thing excepted would be within the general clause had the exception not been made": Brown v. Maryland, 12 Wheaton 419, 438; Commonwealth v. Summerville, 204 Pa. 300, 304. Our conclusion is that the proper construction of the proviso is that it excepts from the operation of the general prohibition of the manufacture and possession of intoxicating liquors, the manufacture of non-intoxicating cider and fruit juices, including the possession thereof by the manufacturer incident to the manufacture after such liquor has, by natural fermentation only, become intoxicating. But in view of the manifest purpose of the statute we are of opinion that it was not the intention of the legislature by this proviso to permit either the manufacture or possession of intoxicating liquor for beverage purposes, even

though the production of non-intoxicating cider or fruit juices may have been the first step in its manufacture. It is our view that the law makers had in mind these facts: that cider, which is apple juice, and other fruit juices, if kept long enough, will by natural process become intoxicating; that fresh cider always becomes intoxicating before it becomes vinegar; that cider and fruit juices, after they become intoxicating, have uses for other than beverage purposes; and that one who has made non-intoxicating cider or fruit juice for use in that state, or one who keeps it until it becomes an intoxicating liquor fit for use as a beverage, but does not have it in his possession for that purpose, might be held to be guilty of an illegal manufacture under the Act. We think that the purpose of the proviso was to negative any contention that might be made against the manufacture of cider or fruit juices for uses other than as a beverage, but that the intent was not to legalize its manufacture or possession for beverage purposes after it becomes intoxicating. This interpretation of the proviso is in harmony with the general purpose of the statute. We conclude, therefore, that the possession of intoxicating liquor, produced by natural fermentation of fruit juices, for use as a beverage in one's private dwelling, is not exempted by the second proviso of section 3 of the statute from the operation of the general prohibition thereof. To hold that the legislature intended by this proviso to permit the possession of intoxicating cider and fruit juices for beverage purposes, if the intoxicating quality resulted wholly from natural fermentation would be wholly inconsistent with the declared purpose of the statute; for, otherwise, it would be in conflict with the XVIIIth Amendment. Examination of the statute discloses that the only intoxicating liquor which one may possess in his private dwelling for beverage purposes is that which was lawfully acquired prior to the passage of the statute. (See sec-

388 COM. OF PENNA. *v.* PETER ALEXANDER, Appel.

Opinion of the Ct.—Dissenting Opinion of the Ct.   [93 Pa. Super. Ct.

tion 4.)   By the terms of the statute proof of the possession of intoxicating liquor is prima facie evidence of an unlawful possession. (Section 13.) The question whether the possession is for beverage purposes is one of fact for the jury. That question should have been submitted to the jury in the present case with an instruction as to the law in accordance with the above conclusions.

The judgment is reversed and a new trial granted.

DISSENTING OPINION BY TREXLER, J.:

A barrel of wine having an alcoholic content of 7.1 per cent. was found in defendant's possession. This possession was unlawful under the Act of March 27, 1923, P. L. 34, section 3. The mere possession was "prima facie evidence that the same was acquired, possessed and used in violation of the act" section 13. The majority opinion concedes this, but concludes that the jury should have been instructed that the possession was not unlawful unless it was intended for beverage · purposes. This would be correct if there were any evidence in the case showing that the wine was not to be used as a beverage. To show this was a matter of defense.· All the Commonwealth was required to prove at the outset was the possession. With the presumption of unlawful possession nothing further was necessary. The defendant in the present case offered nothing to remove the presumption or, in other words, to overcome the prima facie, and to show that it was not intended for beverage purposes and the agreement of counsel as to the facts, which is part of· the record before us, states, referring to the contents of the cask, "the beverage thus produced was kept by him [the defendant] exclusively for. use in his· private ·dwelling." The trial judge very properly summarized the proof presented when he told the jury "if you find that the defendant did have in his possession, at that time, the wine, and if you further

find that it contained in excess of the half of one per cent. of alcohol by volume, that would be a violation of the one count in this indictment charging possession." The remark of the judge in his charge that unless the non-alcoholic character of the fruit juice from which the wine was produced was preserved by some admixture preventing fermentation, the wine came within the prohibition of the act, was apart from the real issue and even if we assume, arguendo, that it was incorrect, was harmless. In short, it was shown at the trial that the cask contained intoxicating wine, presumably held unlawfully, was found in defendant's possession, and he offered no testimony to bring it within any of the exceptions, which would remove the prima facie that it was so held.

I would affirm the judgment.

HENDERSON, J., joins in this dissent.